**UNITED STATES of America,**

v.

**MONTGOMERY COUNTY
CRISIS CENTER.**

Civ. No. JFM–87–2525.

United States District Court,
D. Maryland.

Oct. 7, 1987.

Roann Nichols, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

M. Gregg Diamond, Asst. Co. Atty., Rockville, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

The Government has petitioned this Court for the enforcement of a subpoena duces tecum issued by the Inspector General of the Department of Defense to the Montgomery County Crisis Center ("MCCC"). The subpoena seeks production of documents "pertaining to the receipt of three telephone calls, placed at approximately 8:00 to 9:00 a.m. on February 2, 1987, to ... [MCCC] by an individual identifying himself as a member of the United States Navy." The Inspector General alleges that during the course of these telephone calls, the person making the calls disclosed information classified as Secret concerning his assignment to, and the deployment schedule of, a special Navy unit. The caller also allegedly expressed suicidal notions about his assignment.

The Government has not stated the means by which it learned that the telephone calls were made. It is clear, however, that this information came to the attention of the Inspector General's Office not by virtue of an investigation which it was conducting but from a report given to a deputy assistant inspector general by an agent of the Naval Investigative Service ("NIS"). An affidavit submitted by the deputy assistant states that "the NIS brought this matter to the attention of the Office of Inspector General, DoD, and formally requested the assistance of the Office of Inspector General in obtaining the records from MCCC." Upon reviewing the report, the deputy assistant concluded that the Inspector General's Office should provide the requested assistance to NIS, and thereafter the deputy inspector general issued the subpoena in question.

In seeking enforcement of the subpoena, the Government relies upon the broad statutory language mandating Inspectors General "to conduct and supervise audits and investigations relating to programs and operations" and "to provide leadership and coordination and recommend policies for activities designed (A) to promote economy, efficiency and effectiveness in the administration of, and (B) to prevent and detect fraud and abuse in, such programs and operations...." 5 U.S.C. Appendix 3, Sec-

tion 2.[1] This is not an appropriate case in which to define the outer perimeters of the power granted to Inspectors General under this language. Several factors, however, dictate the conclusion that the issuance of the subpoena in issue here is beyond the scope of that power.

First, the "investigation" to which the subpoena relates concerns a security matter, not one involving alleged fraud, inefficiency or waste—the prevention of which is the Inspector General's clearest statutory charge.

Second, the "investigation" is not even ostensibly related to a general programmatic review but is limited to tracking down the source of one alleged security breach.

Third, the Inspector General did not initiate the investigation on his own but has acted at the behest of NIS on a matter well outside of the Inspector General's area of regular responsibility. *Compare U.S. v. Westinghouse Electric Corp.,* 788 F.2d 164, 169 (3rd Cir.1986).

Fourth, although the Inspector General is authorized to issue subpoenas to carry out all of his "functions assigned by ... [law]," the language of the Senate Committee Report on the 1978 Inspector General Act makes clear that in granting him subpoena power Congress was focusing upon obtaining records necessary to audit and investigate the expenditure of federal funds. Senate Governmental Affairs Committee, Inspector General Act of 1978, S.Rep. No. 1071, 95th Cong., 2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Ad. News 2676, 2709.[2]

Finally, this subpoena entrenches upon expectations of privacy of the person making the telephone call, and its enforcement would therefore raise concerns of constitutional dimension. *Cf. In re: Grand Jury Subpoena: Subpoena Duces Tecum,* 829 F.2d 1291, 1299 (4th Cir.1987); *compare Gibson v. Florida Investigation Committee,* 372 U.S. 539, 544–45 and 558, 83 S.Ct. 889, 892–93 and 899, 9 L.Ed.2d 929 (1963).

No one of these factors in and of itself necessarily invalidates the subpoena. However, the existence of power, as well as the wisdom of its exercise, must be determined within a relevant factual context. Here, the Inspector General has exceeded the scope of his authority, and the petition for enforcement of his subpoena is therefore denied.

---

**1.** In addition to challenging the Inspector General's authority to issue the subpoena, MCCC also argues that various Maryland statutes prohibit it from releasing the documents which the subpoena seeks. However, Maryland Health–General Code Annotated Section 4–301(c)(4) authorizes "providing information to a government agency performing its lawful duties as authorized by an act of the Maryland General Assembly or the United States Congress." Likewise, the argument that Maryland law protects the privacy of communications between social workers and their clients would be unavailing if the subpoena was lawfully issued since under the Supremacy Clause that state privilege must yield to a legitimate federal interest.

**2.** The Office of the Inspector General of the Department of Defense was created by a 1982 amendment to the 1978 Act. However, at the time that the 1978 Senate Committee Report was prepared, an Inspector General for the Department of Defense was included in the proposed legislation.