# Inspector General Authority
# to Conduct Regulatory Investigations

The Inspector General Act of 1978, as amended, does not generally vest in the Inspector General of the Department of Labor the authority to conduct investigations pursuant to regulatory statutes administered by the Department of Labor. The Inspector General has an oversight rather than a direct role in investigations conducted pursuant to regulatory statutes: he may investigate the Department's conduct of regulatory investigations, but may not conduct such investigations himself.

The responsibility to conduct regulatory investigations cannot be delegated by the Secretary to the Inspector General pursuant to section 9(a)(2) of the Inspector General Act.

The significant investigative authority granted to Inspectors General under the Inspector General Act includes the authority to investigate recipients of federal funds, such as contractors and grantees, to determine if they are complying with federal laws and regulations and the authority to investigate the policies and actions of the Departments and their employees. This latter authority includes the authority to exercise "oversight" over the investigations that are integral to the programs of the Department.

March 9, 1989

MEMORANDUM OPINION FOR THE SOLICITOR
DEPARTMENT OF LABOR

This memorandum responds to the request of September 23, 1988, as supplemented by a letter of December 5, 1988, for the opinion of this Office as to the scope of the investigative authority of the Inspector General of the Department of Labor under the Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101 (1978), as thereafter amended (codified as amended at 5 U.S.C. app. §§ 1-9) ("the Act"). Specifically, we were asked to determine whether the authority granted the Inspector General includes the authority to conduct investigations pursuant to statutes that provide the Department with regulatory jurisdiction over private individuals and entities that do not receive federal funds.

As set forth below, we conclude that the Act does not generally vest in the Inspector General authority to conduct investigations pursuant to regulatory statutes administered by the Department of Labor.[1] Rather,

---

[1] We shall henceforth refer to such investigations as "regulatory investigations." Such investigations generally have as their objective regulatory compliance by private parties. On the other hand, investigations properly within the ambit of the Inspector General generally have as their objective the elimination

Continued

Congress intended the Inspector General to be an objective official free from general regulatory responsibilities who investigated the employees and operations of the Department, as well as its contractors, grantees and other recipients of federal funds, so as to root out waste and fraud. Thus, the Inspector General has an oversight rather than a direct role in investigations conducted pursuant to regulatory statutes: he may investigate the Department's conduct of regulatory investigations but may not conduct such investigations himself.[2]

## I. Background

A dispute has arisen between the Solicitor and Inspector General of the Department of Labor as to the types of investigations the Inspector General is authorized to conduct. It is undisputed that the Inspector General is authorized to conduct investigations of the Department's operations, employees, contractors, grantees and other recipients of federal funds. What is disputed is whether the Inspector General is also authorized to conduct investigations pursuant to statutes that grant the Department regulatory authority over individuals and entities outside the Department who do not receive federal funds.

The dispute has precipitated interest beyond the Department of Labor.[3] At issue is the authority of the Inspector General under regulatory

---

[1] ( .continued)
of waste and fraud in governmental departments, including waste and fraud among its employees, contractors, grantees and other recipients of federal funds As we note below, however, *see infra* note 20, the Inspector General may investigate private parties who do not receive federal funds when they act in collusion with the Department's employees or other recipients of federal funds to avoid regulatory compliance.

[2] When our opinion was first requested in this matter, we attempted to limit our opinion to the specific situation that prompted the dispute between the Solicitor of Labor and the Inspector General *See* Letter for George R Salem, Solicitor of Labor, from Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel (Oct. 28, 1988); Letter for J. Brian Hyland, Inspector General, Department of Labor, from Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel (Oct. 28, 1988). Your predecessor replied that the dispute had not arisen from a specific statutory or factual context, but rather from the Inspector General's claim of "general authority to investigate any violation of any statute administered or enforced by the Department." Letter for Douglas W Kmiec, from George R Salem at 1 (Dec 5, 1988) In his response, the Inspector General agreed that the dispute concerned the existence of such general authority Letter for Douglas W. Kmiec, from J. Brian Hyland (Dec 22, 1988) ("Hyland Letter"). Accordingly, while we have made reference to certain specific regulatory schemes (such as the Fair Labor Standards Act) which Mr. Salem offered as paradigmatic examples of statutes giving rise to the general dispute, we have responded to the request with an opinion establishing general principles We would be pleased to give more specific guidance with respect to the scope of the Inspector General's authority in the context of a particular statutory scheme should you or the Inspector General so request.

[3] The Inspector General Act is a generic one in the sense that its core provisions apply to most of the departments and agencies of the federal government. *See* 5 U.S C app. §§ 2(1), 11(2) & 8E Our opinion, therefore, will necessarily have applicability beyond the Department of Labor For this reason, this opinion has been of interest to various Inspectors General in other departments, and in addition to the materials submitted by the Inspector General of the Department of Labor, we have reviewed carefully the letters and memoranda other Inspectors General have submitted to us. Memorandum for Dennis C Whitfield, Deputy Secretary of Labor, from Richard Kusserow, Inspector General, Department of Health and Human Services ("HHS") (Oct. 6, 1988); Letter for Douglas W. Kmiec, Assistant Attorney General,
Continued

statutes such as the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651-678, which impose restrictions on individuals and entities who are not employees of a Department and who are not contractors, grantees or other recipients of federal funds distributed by the Department.[4] FLSA, for instance, requires that a fixed minimum wage be paid to any covered employee, *id.* § 206, as well as imposing other regulatory requirements such as restricting the work week to 40 hours unless the employee is compensated at not less than one and one half times the regular rate. *Id.* § 207. Similarly, OSHA imposes on employers the duty to furnish a safe workplace and to comply with the safety standards promulgated by the Secretary of Labor under its authority. *Id.* § 654(a).

The Secretary of Labor is the official charged with administering these statutes. That authority includes specific grants of enforcement and investigative authority. *See, e.g., id.* §§ 212(b), 657. The Inspector General, however, believes that the provisions of the Act granting him authority to conduct investigations "relating to the programs" of the Department vest in him general investigative authority under these regulatory statutes. Memorandum for the Deputy Secretary, Department of Labor, from J. Brian Hyland, Inspector General, Department of Labor, *Re: Authority of Inspector General* at 2 (Oct. 17, 1988) ("Hyland Memo").[5] Indeed, he argues that since the Act gives him authority to "supervise" all investigations "relating to programs" of the Department of Labor, he has supervisory authority over the Secretary of Labor with respect to her exercise of her statutory authority to conduct investigations pursuant to the regulatory statutes the Department administers. *Id.* at 7.

The Solicitor disagrees. He views the Inspector General as an auditor and internal investigator for the Department — authorized to investigate the operations of the Department, the conduct of its employees and the Department's contractors, grantees and other recipients of federal funds.[6]

---

[3] ( . continued)
Office of Legal Counsel, from Charles R. Gillum, Inspector General, Small Business Administration (Nov. 4, 1988), Letter for Douglas W Kmiec, from John W Melchner, Inspector General, Department of Transportation (Dec 1, 1988), Letter for Douglas W Kmiec, from Paul A Adams, Inspector General, Department of Housing and Urban Development (Nov. 30, 1988), Letter for Douglas W Kmiec, from Francis D. DeGeorge, Inspector General, Department of Commerce (Dec 1, 1988)

[4] At our request, the Solicitor provided a detailed description of three investigations undertaken by the Inspector General. This was to clarify for our benefit the nature of the dispute between the Solicitor and the Inspector General We have addressed here the general legal question asked by the Solicitor. We express no opinion as to whether any of these particular investigations was authorized.

[5] The Inspector General does not claim that he has the same enforcement and litigative authority as the Secretary of Labor. For instance, he neither claims authority under the FLSA to impose civil monetary penalties, nor the authority to initiate civil litigation Rather, he claims the authority to conduct regulatory investigations and refer the results to the Department of Justice for civil action or criminal prosecution.

[6] The Solicitor does not question the authority of the Inspector General to conduct investigations relating to organized crime and racketeering to the extent that authority derives from the jurisdiction of the
Continued

## II. Discussion

The Act established the Office of Inspector General in the Department of Labor and in the other covered departments. The purpose of the Act, as stated in section 2, is "to create independent and objective units" to "conduct and supervise audits and investigations relating to the programs and operations" of the covered departments, 5 U.S.C. app. § 2(1), and "to provide leadership and coordination and recommend policies for activities designed (A) to promote economy, efficiency, and effectiveness in the administration of, and (B) to prevent and detect fraud and abuse in, such programs and operations." *Id.* § 2(2).

Section 4 of the Act provides authority that is correlative to these responsibilities:

> (a) It shall be the duty and responsibility of each Inspector General, with respect to the establishment within which his Office is established—

> (1) to provide policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of such establishment;

> ....

> (3) to recommend policies for, and to conduct, supervise, or coordinate other activities carried out or financed by such establishment for the purpose of promoting economy and efficiency in the administration of, or preventing and detecting fraud and abuse in, its programs and operations; ....

*Id.* § 4(a). Furthermore, section 6(a)(2) authorizes the Inspector General "to make such investigations and reports relating to the administration of the programs and operations of the applicable establishment as are [in his judgment] necessary or desirable." *Id.* § 6(a)(2).

Finally, section 9(a)(2) authorizes the transfer of "such other offices or agencies, or functions, powers, or duties thereof, as the head of the establishment involved may determine are properly related to the functions of

---

[6] (...continued)
Office of Special Investigations whose functions were specifically transferred to the Inspector General in the Act. 5 U S C. app § 9(a)(1)(G). Various issues relating to the scope of that authority are addressed in an earlier opinion of this Office Memorandum for Stephen S. Trott, Assistant Attorney General, Criminal Division, from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel, *Re On-Site Inspection of Books and Records in Criminal Investigations of Labor Unions and Employee Benefit Plans* (Dec. 23, 1983)

the [Inspector General] and would, if so transferred, further the pur- poses of this Act," but adds the caveat: "except that there shall not be transferred to an Inspector General ... program operating responsibili- ties." *Id.* § 9(a)(2).

The question presented is the meaning of the phrase "relating to the programs and operations" in section 4 and "relating to the administration of the programs and operations" in section 6, as well as similar language elsewhere in the Act.[7] The Act does not define terms such as "investiga- tions" and "programs," nor does the Act expressly address whether the Inspector General is authorized to conduct investigations pursuant to regulatory statutes administered by the Department. But we think the meaning of the statutory language is clear when examined in the context of the structure and legislative history of the Act.

The impetus for the Inspector General Act of 1978 was revelations of significant corruption and waste in the operations of the federal govern- ment, and among contractors, grantees and other recipients of federal funds. S. Rep. No. 1071, 95th Cong., 2d Sess. 4 (1978). Furthermore, Congress concluded that the existing audit and investigative units were inadequate to deal with this problem because they reported to, and were supervised by, the officials whose programs they were to audit and inves- tigate. *Id.* at 5-6; H.R. Rep. No. 584, 95th Cong., 1st Sess. 5 (1977).

The Act addressed both the underlying problem and this organization- al defect. The Inspector General was to deal with "fraud, abuse and waste in the operations of Federal departments and agencies and in federally- funded programs." S. Rep. No. 1071 at 4. The Inspector General was to be an objective official reporting directly to the head of the department and not to the program head whose operations were to be audited and inves- tigated. H.R. Rep. No. 584 at 11. This objectivity was to be fostered by a

---

[7] In a supplemental letter to us, the Inspector General argues that it is necessary to accept his broad view of his authority lest a situation be created whereby there was no entity investigating a wide-range of criminal offenses under the regulatory jurisdiction of the Department of Labor Letter for Douglas W Kmiec, Assistant Attorney General, Office of Legal Counsel, from J. Brian Hyland, Inspector General, Department of Labor (Dec 22, 1988). Specifically, he argues that while the Department of Labor may gen- erally have criminal investigative authority over the offenses listed in the labor provisions (title 29 of the U S. Code), it does not, with one specific exception, have criminal investigative authority over the gen- eral criminal provision of title 18 *Id.* at 1-2. By contrast, the Inspector General argues that he does pos- sess criminal investigative authority under title 18 *Id* at 2.

The Inspector General's argument is misconceived. We have no doubt that the Inspector General has criminal investigative authority, *see* 5 U S C. app. § 4(d), *United States v Aero Mayflower Transit Co.*, 831 F.2d 1142, 1145 & n 3 (D C. Cir. 1987), but he only has that authority *within the scope* of his statutori- ly-granted investigative authority It is the scope of that authority that is at issue here

Moreover, we note that it would by no means be anomalous if neither the Secretary of Labor nor the Inspector General had criminal investigative authority over some statutory violation that affected the Department of Labor. The Federal Bureau of Investigation ("FBI") has general criminal investigative authority over all violations of federal law. 28 U.S C § 533(1); 28 C F.R. § 0.85(a) (1989). *See also* 28 U S C § 535. Other departments or agencies have authority to conduct criminal investigations only "when inves- tigative jurisdiction has been assigned by law to such departments and agencies." 28 U S.C. § 533. Thus, it is not unusual for the FBI to have exclusive criminal investigative authority with regard to certain statutory violations.

58

lack of conflicting policy responsibility: "[T]he legislation gives the [Inspector General] no conflicting policy responsibilities which could divert his attention or divide his time; his sole responsibility is to coordinate auditing and investigating efforts and other policy initiatives designed to promote the economy; efficiency and effectiveness of the programs of the establishment." S. Rep. No. 1071 at 7.

The legislative history of the Act reflects a consistent understanding that the role of the Inspector General was to be that of an investigator who would audit and investigate the operations of the departments and their federally-funded programs. *See, e.g.*, S. Rep. No. 1071 at 27 ("The [Inspector General's] focus is the way in which Federal tax dollars are spent by the agency, both in its internal operations and its federally-funded programs.").[8] The legislative history also rejects the idea that Inspectors General would have the authority to conduct regulatory investigations of the type at issue here. The most comprehensive statement is in the House Report:

> While Inspectors General would have direct responsibility
> for conducting audits and investigations relating to the effi-

---

[8] The Inspector General has quoted to us various statements made by Members of Congress during hearings or debates that he asserts support his view that Congress intended that Inspectors General have authority to investigate violations of regulatory statutes administered by their departments. These quotations include general statements to the effect that Inspectors General were to have broad authority to investigate the programs and employees of the departments, *see, e g* , Hyland Memo at 3 (quoting Rep Fountain), as well as general statements that Inspectors General would restore public confidence in government, *see, e g* , *id* at 4 n.8 (quoting Rep. Levitas) None of these quotations provides support for the view that Congress intended to vest the Inspectors General with authority over regulatory investigations

The Inspector General also argues that the hearings made Congress aware that the then-existing Inspectors General were undertaking regulatory investigations under the departments' regulatory statutes, but the evidence he cites does not support his argument For instance, he quotes a report submitted to a Senate Committee at the same time as the Senate was considering the Act in which the Inspector General of the Department of Health, Education and Welfare defined "abuse" as covering "a wide variety of excessive services or program violations, and improper practices," *id* at 4, but there is nothing in the quotation to indicate that the reference to "program violations" meant general regulatory enforcement rather than violations of law committed by department employees or its contractors or employees. Similarly, the Inspector General cites references in the testimony of the non-statutory Inspector General of the Department of Agriculture at the House committee hearings regarding investigations of meat and grain inspections which had been conducted by his office. We have examined the portions of the testimony of the Inspector General and other officials of the Department of Agriculture at these hearings which dealt with these investigations The only relevant colloquy we can find occurred when Representative Jenrette asked the Audit Director of the Department of Agriculture whether the "majority" of these investigations had to do with employees of that Department. The response was: "Yes, I would say most of the time it had to do with some sort of inspection function and inspection employees Also, the plants that had been afforded meat inspection service or meat grading service." *Establishment of Offices of Inspector General· Hearings on H.R. 2819 Before the Subcomm of the House Comm. on Government Operations*, 95th Cong , 1st Sess. at 47 (1977) Representative Jenrette then responded that this was appropriate because "employees of the Department    should certainly have oversight   . before the citizen on the street," and that the people the taxpayers are paying should be subject to "control" and "investigat[ion]." *Id* We believe, in fact, that the grain inspectors who had been the subjects of these investigations were licensees of the Department of Agriculture not employees. In any event, this testimony hardly provides support for the view that Congress generally understood that conducting regulatory investigations was part of the role of Inspectors General

59

ciency and economy of program operations and the prevention and detention of fraud and abuse in such programs, *they would not have such responsibility for audits and investigations constituting an integral part of the programs involved.* Examples of this would be audits conducted by USDA's Packers and Stockyards Administration in the course of its regulation of livestock marketing and *investigations conducted by the Department of Labor as a means of enforcing the Fair Labor Standards Act.* In such cases, the Inspector General would have oversight rather than direct responsibility.

H.R. Rep. No. 584 at 12-13 (emphasis added). *See also* S. Rep. No. 1071 at 27-28.[9]

The statement in the House Report that Inspectors General were to have "oversight" but not "responsibility for audits and investigations constituting an integral part of the program involved" is not surprising because to vest such authority in the Inspectors General would have constituted a fundamental alteration in the departments' regulatory authority. It would have taken away the power to control the investigatory portion of a department's regulatory policy from the official designated by statute or by the Secretary[10] and placed it in an official separate from the regulatory division of the department.[11] As the legislative history makes

---

[9] Similarly, Representative Levitas stated

The Inspectors General to be appointed by the President with the advice and consent of the Senate will first of all be independent and have no program responsibilities to divide allegiances. The Inspectors General will be responsible for audits and investigations only

．．．．

Moreover, the Offices of Inspector General would not be a new "layer of bureaucracy" to plague the public. They would deal exclusively with the internal operations of the departments and agencies Their public contact would only be for the beneficial and needed purpose of receiving complaints about problems with agency administration and in the investigation of fraud and abuse by those persons who are misusing or stealing taxpayer dollars.

124 Cong. Rec. 10,405 (1978).

[10] For instance, as we have noted before, the Secretary of Labor is expressly provided with authority to engage in investigations to assure compliance with the health and safety regulations of OSHA. *See* 29 U S.C § 657

[11] The Inspector General argues, however, that no "policy" considerations would be implicated by his having supervisory authority over the regulatory investigations of the Department. While conceding that "[d]ecisions regarding the emphasis, focus, and type [civil, criminal, administrative] of program enforcement, and the best use of available program resources, can have substantive 'policy' ramifications," he states that "these considerations have little or no bearing when potential criminal violations are involved," and that it is toward uncovering such criminal violations that he intends to direct his efforts. Hyland Memo at 8. The Inspector General's argument fails to recognize that whether to choose criminal over civil remedies is one of the classic "policy" choices that a regulator must make.

The Inspector General also argues that his investigative activity implicates no "policy" concerns because he will refer cases to the Department of Justice, which will make the final decision as to whether to file criminal charges. Hyland Letter at 2-3 It is true that the Department of Justice has the final say over whether criminal charges will be filed. 28 U.S.C. §§ 516, 519 But it is equally true that the Department of Justice is responsive to the policy judgments of the referring agencies, and will, within the limits of available resources, generally follow the wishes of the referring agency as to questions such as the appropriate balance between criminal and civil enforcement.

clear, however, it was not the intention of Congress to make such a fundamental change in the regulatory structure of the departments and agencies of the federal government. Rather, Congress was concerned with waste of federal funds and the need for an independent official who could review the employees and operations of federal agencies.

The statement in the House Report that Inspectors General were not to conduct investigations "constituting an integral part of the programs involved" is also dictated by the nature of the Inspector General's role. The purpose of creating an Inspector General was to have an official in the department who would not have responsibility for the operations of the department and would thus be free to investigate and criticize. If the Inspector General undertakes investigations under the department's regulatory statutes, he could not perform this role. One of the Inspector General's functions is to criticize regulatory investigative policy, a function he cannot perform if it is his responsibility to set and implement that policy.

The Inspector General, for instance, indicates that he disagrees with the current regulatory investigative policy of OSHA which he views as illustrating "an ingrained philosophy of enforcement that subordinates and trivializes the investigation and prosecution of significant criminal felony violations in favor of civil and administrative remedies and petty criminal offenses (e.g., misdemeanors)." Hyland letter at 4. We would expect therefore that the Inspector General might discharge his statutory "oversight" duty by preparing a report for the Secretary and Congress detailing this criticism of OSHA's regulatory investigative policies. *See* 5 U.S.C. app. § 5. However, once the Inspector General assumes authority over OSHA's regulatory investigative activity — as under his interpretation of the statutory language he is bound to do[12] — he would become an official responsible for implementing policy. Thus, with regard to the regulatory investigations the Inspector General would be undertaking, there would be no truly objective person to investigate claims of misbehavior and abuse. The purpose of the Act is not only to protect the taxpayers' money, but also to serve as a check on mistreatment or abuse of the general public by government employees. If the Inspector General, however, is conducting and supervising regulatory investigations of the department, the very evil that Congress wanted to avoid by establishing an objective Inspector General would be created: namely, the responsible official would be charged with auditing and investigating his own office.

In sum, we think that the legislative history and structure of the Act provides compelling evidence that in granting the Inspector General authority to "conduct and supervise audits and investigations relating to

---

[12] Specifically, the Inspector General argues that the statutory mandate in section 4(a)(1) that the Inspector General is "to provide policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of" the department vests *supervisory* power in him over all investigations conducted by the Department of Labor, including investigations such as those conducted under OSHA that are integral to the regulatory enforcement of the program. Hyland Memo at 7.

the programs and operations" of the department, 5 U.S.C. app. § 2(1), Congress did not intend to grant the Inspector General authority to conduct, in the words of the House Report, "investigations constituting an integral part of the programs involved." Rather, the Inspector General's authority with respect to investigations pursuant to the Department's regulatory statutes is, again in the words of the House Report, one of "oversight." We therefore conclude that investigations undertaken pursuant to the Department of Labor's regulatory statutes, such as FLSA and the OSHA, are not the type authorized by the Act.

We also conclude that this type of regulatory investigative authority cannot be delegated by the Secretary to the Inspector General under section 9(a)(2) of the Act.[13] Section 9(a)(2) authorizes the Secretary to transfer additional functions to the Inspector General but only if they are "properly related" to the functions of the Inspector General and would "further the purposes of this Act." It specifically forbids the transfer of "program operating responsibilities" to the Inspector General. Whether or not the conduct of investigations pursuant to regulatory statutes constitutes "program operating responsibilities" within the meaning of the Act, such investigative authority, as outlined above, is inconsistent with structure and purpose of the Act and cannot be said to be "properly related" to the Inspector General's functions, nor could the transfer of these functions to the Inspector General be said to "further the purpose of the Act."[14] Thus, if the Secretary and the Inspector General believe that there is a need for the Inspector General to undertake particular types of regulatory investigations, they should seek from Congress specific amendments of the Act.[15]

---

[13] We do not address whether any other statute provides the Secretary with authority to delegate such functions to the Inspector General Nor do we address how any such provision should be reconciled with the Act's express prohibition on the transfer of "program operating responsibilities" to an Inspector General.

Moreover, while we do not agree that section 9(a)(2) provides authority to delegate the conduct of regulatory investigations to the Inspector General of Health and Human Services, see Memorandum for Dennis C Whitfield, Deputy Secretary of Labor, from Richard P. Kusserow, Inspector General, Department of Health and Human Services at 6-7 (Oct. 6, 1988), we believe that the Inspector General may possess authority to conduct certain investigations into the programs he references (such as Medicare) as part of his responsibility under the Act to investigate regulatory compliance by recipients of federal funds We have not been asked, however, to review any specific statutes under the jurisdiction of the Secretary of HHS and thus do not address this question.

[14] We also disagree with the Inspector General that he can assume criminal investigative authority by means of a Memorandum of Understanding ("MOU") with the FBI. As this Office has previously stated, the Attorney General does not have the authority to delegate his criminal investigative authority under 28 U S C § 533 to other departments or agencies of the government See, e.g., Department of Labor Jurisdiction to Investigate Certain Criminal Matters, 10 Op. O.L.C. 130, 132-33 (1986). An MOU with the FBI is only appropriate where the department or agency already has criminal investigative authority concurrent with that of the FBI. Id. at 133

Accordingly, insofar as any MOU purports to provide the Inspector General with criminal investigative authority not specifically granted by statute, it should be revised. On the other hand, the Department of Justice may deputize officials in other agencies, including investigators assigned to an Inspector General's office, to enforce the criminal law Of course, criminal investigations by deputized officials in other agencies remain under the supervision of the Department of Justice.

Our conclusions here are consistent with the decision of the district court in *United States v. Montgomery County Crisis Center*, 676 F. Supp. 98 (D. Md. 1987).[16] In this case, the Inspector General of the Department of Defense had issued a subpoena to a community counseling center seeking production of documents relating to telephone calls made by a member of the United States Navy who was allegedly suicidal and who had allegedly disclosed classified information during the telephone calls. In holding the subpoena to be outside the scope of the Inspector General's authority, the court pointed to a number of factors including privacy concerns, no one of which was necessarily dispositive. *Id.* at 99. Three of the factors the court pointed to, however, are relevant here. The court stated:

> First the "investigation" to which the subpoena relates concerns a security matter, not one involving alleged fraud, inefficiency or waste — the prevention of which is the Inspector General's clearest statutory charge.

> Second, the "investigation" is not even ostensibly related to a general programmatic review but is limited to tracking down the source of one alleged security breach.

> ....

> [In addition,] although the Inspector General is authorized to issue subpoenas to carry out all of his "functions assigned by ... [law]," the language of the Senate Committee Report on the 1978 Inspector General Act makes clear that in granting him subpoena power Congress was focusing upon obtaining records necessary to audit and investigate the expenditure of federal funds.

---

[15] The Act itself contains what appears to be at least one specific exception in the authorization of the transfer of the Office of Special Investigations in the Department of Labor to the Inspector General. *See supra* note 6. In 1988, there was also an attempt to transfer the Office of Investigations at the Nuclear Regulatory Commission ("NRC") to the new office of the Inspector General of NRC, but that attempt did not succeed. *See infra* note 19.

[16] The conclusion we reach here is also consistent with an earlier opinion of this Office. *Authority of the State Department Office of Security to Investigate Passport and Visa Fraud*, 8 Op. O L C 175 (1984). In this opinion we considered among other questions whether the Inspector General of the Department of State had authority only to investigate "passport and visa malfeasance" under 18 U S C. §§ 1542-1546 (malfeasance or criminal activity on the part of Department of State employees in obtaining passports or visas for themselves or others) or whether he also could investigate "passport and visa fraud" under 18 U S C § 1541 (criminal deceit in passport or visa acquisition by persons other than Department of State employees) At that time, the authority of the Inspector General of the Department of State derived from the Foreign Service Act of 1980, 22 U S.C § 3929 (The Department of State was first brought within the ambit of the Act by Pub L No 99-399, 100 Stat. 867 (1986) ) The Foreign Service Act, however, had been "patterned" after the Inspector General Act of 1978 and explicitly incorporated

Continued

*Id.* While *Montgomery Crisis Center* involved a different type of investigation than those at issue here, the court's analysis of the Inspector General's statutory investigative authority supports the conclusions we have reached.

We also note that the legislative history of the recent amendments to the Act, Pub. L. No. 100-504, 102 Stat. 2515 (1988) (to be codified at 5 U.S.C. app.), which extended its coverage to a number of other Departments, including the Treasury Department and the Department of Justice, as well as extending the Inspector General concept to 33 other "designated federal entities," displays an understanding of the authority of the Inspector General that is fully consistent with the conclusions we have reached in this opinion. For instance, the House Report responded to concerns that extending the Act to the Department of Justice would interfere with the Department's investigative and law enforcement functions in the following language:

---

[16] ( . continued)
the portions of the Act granting investigative authority. Thus, we looked to the structure and legislative history of the Act for guidance in determining the scope of the investigative authority possessed by the Inspector General under the Foreign Service Act. 8 Op. O.L.C at 177-78 Our conclusion was that legislative history of the Act "strongly suggests that Congress intended that the focus of the Inspector General's authority be on the conduct of Department employees or contractors as opposed to the conduct of outside persons who may have occasion to deal with the Department " *Id.* at 178. Ultimately we concluded that Inspector Generals did not have authority to investigate "passport and visa fraud," *i.e.*, fraud not involving employees of the Department of State. *Id* at 179

Our opinion is also consistent with various judicial decisions upholding the subpoena power of Inspectors General in cases involving investigations of contractor or grantee fraud. *See, e g., United States v. Westinghouse Elec Corp.*, 788 F 2d 164 (3d Cir. 1986) (Inspector General of Department of Defense investigation of defense contractor), *United States Dep't of Hous and Urban Dev v. Sutton*, 68 B R. 89 (E.D. Mo. 1986) (Inspector General of HUD investigation of properties insured by HUD) The only judicial opinion that we are aware of that is possibly inconsistent with our opinion is an unreported district court opinion that was supplied to us by the Inspector General, *United States v H P. Connor* (Civ. No. 85-4638, D N J , Dec. 9, 1985). This decision involved the enforcement of a subpoena issued by the Inspector General in the course of an investigation of alleged Davis-Bacon Act violations. In an opinion enforcing the subpoena, the court stated "No argument can be made that this investigation is beyond the Inspector General's statutory grant." Slip Op. at 6. There is no citation or reasoning to support this statement, and it is unclear from the opinion whether this issue was even argued We think the issue of whether the Inspector General of the Labor Department has general authority to investigate all federal contractors under the Davis-Bacon Act is more complex than the district court's opinion reveals.

The Davis-Bacon Act requires federal contractors to pay a minimum wage (established by reference to prevailing wages in the community) 40 U.S.C. § 276(a). The Secretary of Labor is expressly given authority to conduct investigations to assure compliance with these requirements *See* Reorg. Plan No. 14 of 1950, 5 U S.C. app at 1261. In order to assure compliance with the Davis-Bacon Act, we understand the Secretary of Labor may investigate not only contractors of the Department of Labor but any federal contractor To the extent this is true, investigations of contractors outside the Department of Labor seem akin to regulatory investigations because they are unrelated to waste and fraud in the operations of the Department of Labor itself or among its employees, contractors or grantees Thus, there is a substantial question whether it is appropriate for the Inspector General of the Department of Labor to conduct general investigations of Davis-Bacon Act compliance by federal contractors outside the Department of Labor. Before rendering an opinion on the scope of the authority of the Inspector General of the Department of Labor to conduct investigations pursuant to the Davis-Bacon Act, however, we would want your views and those of the Inspector General on how this issue should be resolved in light of the general principles set out in this opinion and the specific provisions of the Davis-Bacon Act

A simple extension of the 1978 act to include the Department of Justice would not result in a direct and significant distortion and diffusion of the Attorney General's responsibilities to investigate, prosecute, or to institute suit when necessary to uphold Federal law. The investigation and prosecution of suspected violations of Federal law and the conduct of litigation are parts of the basic mission or program functions of the Department of Justice. The 1978 act does not authorize inspectors general to engage in program functions and, in fact specifically prohibits the assignment of such responsibilities to an inspector general.

H.R. Rep. No. 771, 100th Cong., 2d Sess. 9 (1988).

Similarly, the House Report described the provisions of the proposed bill (to be codified as section 8E of the Act) which extended the Inspector General concept[17] to 33 other federal entities as requiring "that multiple audit and investigative units in an agency (*except for units carrying out audits or investigations as an integral part of the program of the agency*) be consolidated into a single Office of Inspector General ... who would report directly to the agency head and to the Congress." *Id.* at 14 (emphasis added).[18] This statement is followed almost immediately by the statement that these newly-created "inspectors general would have the same authorities and responsibilities as those provided in the 1978 act." *Id.* at 15. It is also significant that a provision in the Senate bill that would have transferred to the newly-created Office of the Inspector General at the Nuclear Regulatory Commission the office that conducted the Commission's regulatory investigations was dropped after objections were raised by several Senators.[19]

---

[17] The principal difference between the Inspectors General at these 33 entities and the Inspectors General in the other departments and agencies is that the former are appointed, and removable, by the head of the agency or entities rather than by the President *See* 5 U.S C. app. § 8E(c).

[18] This quotation is from the Committee report describing the bill that was passed by the House, and the relevant provisions of which were adopted by the House-Senate conference and enacted into law. An earlier version of the bill introduced in the House, *see* 134 Cong. Rec. 3013 (1988), but never voted on, as well as the bill passed by the Senate, *see* 134 Cong Rec. 612 (1988), included a definition of the "audit units" that were to be established in the other federal establishments that tracks the quoted language in the Committee report A comparison of the two versions of the House bill indicates that the definition was dropped as part of a simplification of the structure of the bill whereby the concept of the Inspector General was incorporated by reference rather than being defined There is nothing in the House debates to suggest that the deletion of this definition from the earlier version of the bill was intended to have substantive effect. This is confirmed by the Conference Report, which in describing the reconciliation of the relevant portions of the House and Senate bills does not indicate that the deletion of the definition of "audit unit" from the Senate bill was understood to have any substantive consequences. *See* 134 Cong. Rec 27,283 (1988)

[19] The bill as introduced in the Senate provided for the transfer to the newly-created Office of the Inspector General at the Nuclear Regulatory Commission not only the personnel and functions of the Office of Internal Audit which performed "the typical IG functions — that is, internal audit and investigations," 134 Cong Rec 616 (1988) (statement of Sen. Glenn), but also the functions of the Office of

Continued

65

Finally, in light of the genuine concern expressed to us by some Inspectors General, we think it worthwhile to set out briefly the significant investigatory authority that is granted to Inspectors General under the Act. Without purporting to provide a complete description of the nature and scope of these authorities, we simply note that the Inspector General: (1) has authority to investigate recipients of federal funds, such as contractors and grantees, to determine if they are complying with federal laws and regulations,[20] and (2) can investigate the policies and actions of the Departments and their employees.[21] Of significance here, this latter authority includes the authority to exercise "oversight" over the investigations that are integral to the programs of the Department. Thus, the Inspector General has the authority to review regulatory inves-

---

[19] ( continued)
Investigations ("OI"), which conducted program investigations of NRC licensees The Senate Report described the transfer of OI to the Inspector General as "consistent" with the Act S Rep. No. 150, 100th Cong., 1st Sess. 18 (1987). When the bill was reported from the Committee to the full Senate, however, there was objection to the transfer of OI to the Office of the Inspector General on the ground that it would interfere with the authority of the Commission to perform its regulatory functions resulting from its loss of control of the investigative unit which conducted investigations integral to the Commission's regulatory mission. 134 Cong Rec. 616 (1988) As a result, the Committee Chairman, Senator Glenn, agreed to drop the transfer of OI to the Office of the Inspector General from the bill *Id*

[20] Thus, our opinion should not be understood as suggesting that the Inspector General does not have authority to conduct investigations that are *external* to the Department He clearly has that authority in the case of federal contractors, grantees and other recipients of federal funds, as well as authority to investigate individuals or entities that are alleged to be involved with employees of the Department in cases involving employee misconduct or other activities involving fraud, waste and abuse. For instance, the Inspector General would clearly be able to undertake investigations into the conduct of a corporation that paid bribes to an employee of the Department of Labor to overlook violations of OSHA regulations.

[21] The Solicitor of Labor does not challenge the exercise of such authority by the Inspector General:

> [T]he Inspector General of DOL and I are in full agreement that if the IG's office has reason to believe that some sort of misfeasance or malfeasance by DOL personnel has occurred, the IG's Office is fully authorized to investigate such possible misconduct, whether or not the investigation of a program violation is also involved. Secondly, the investigations to which this question is directed do *not* include any which might be directed against a recipient of funds from the Department, whether those funds have been obtained by means of lawful or unlawful activity, so long as the investigation is directed at activities which occurred in connection with the receipt or use of the DOL funds.

Letter for Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel, from George Salem, Solicitor of Labor, at 2 (Dec. 5, 1988). The Inspector General brought to our attention a 1981 letter from the Criminal Division of the Department of Justice The letter was in response to an inquiry from the General Counsel of the Department of Health and Human Services as to the authority of the Inspector General to investigate violations of the Food and Drug Act The relevant portion of the letter states·

> We are of the opinion that the legislation establishing the Inspectors General was generally not intended to replace the regulatory function of an agency such as FDA to investigate possible violations of the Act However, we also feel that as part of the IG's general oversight responsibilities, he is authorized to investigate allegations of improprieties within the programs of his department or agency. Therefore, we can envision situations where FDA and/or the IG will be investigating alleged violations of the Act

Letter for Juan A. del Real, General Counsel, HHS, from D Lowell Jensen, Assistant Attorney General, Criminal Division (Dec. 10, 1981) The Inspector General suggests that this letter supports his view that
Continued

66

tigative activities of the Department of Labor, and to report his criticism and findings to the head of the department and Congress. All we conclude here is that the Act does not give the Inspector General the authority to assume these regulatory investigative responsibilities himself.

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*

---

[21] (...continued)

he has authority to conduct regulatory investigations. We find nothing in this letter inconsistent with our conclusion here Like the Criminal Division in 1981, we believe that the Inspector General is authorized to investigate "allegations of improprieties within the programs of his department" and thus we too can envision situations where the Inspector General of HHS would investigate alleged violations of the Food and Drug Act. An obvious example of such a situation would be when there were allegations that employees of the Food and Drug Administration had been bribed to approve a drug for sale to the public.